# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHUKWUEMEKA EZEKWO AND IFEOMA EZEKWO, | CIVIL ACTION NO. |
| Plaintiffs, | 15-3167 (SDW) (LDW) |
| v. | |
| CHRISTOPHER QUIRK, MICHAEL CHRISTIANSEN, THORNTON WHITE and the CITY OF ENGLEWOOD, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is the motion of defendant City of Englewood to enforce a settlement agreement and for reimbursement of costs and attorneys' fees (ECF No. 87), and the motion of plaintiffs *pro se* Chukwuemeka Ezekwo and Ifeoma Ezekwo to remand the case for trial (ECF No. 107). United States District Judge Susan D. Wigenton referred the motions to the undersigned for a Report and Recommendation. Having considered the parties' written submissions on the motions and the testimony and exhibits proffered at the evidentiary hearing before the Court held on November 6, 2017, for the reasons set forth in this Report and Recommendation, and for good cause shown, this Court recommends that defendants' motion to enforce the settlement be **GRANTED**, defendants' motion for costs and attorneys' fees be **DENIED**, and plaintiffs' motion to remand the case for trial be **DENIED**.

## I.     BACKGROUND

This is an action alleging deprivation of plaintiffs' federal civil rights under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States

Constitution in connection with a physical confrontation between three City of Englewood police officers and the plaintiffs in Englewood Hospital, much of which was captured on videotape. *See* ECF No. 1.

A procedural history of the settlement negotiations is necessary to place the motions in context. The Court held an initial settlement conference on February 2, 2017. During the conference, plaintiffs waited in the courtroom while the Court held settlement discussions with their counsel and defendants' counsel, alternatively, in the jury room of the undersigned's courtroom. The settlement conference concluded without a settlement, although all counsel agreed that discussions should be continued at a subsequent conference.

The Court held a subsequent settlement conference on March 28, 2017. At that time, only counsel for the parties were present and none of the parties themselves. It was represented to the Court by plaintiffs' counsel that they were communicating the settlement positions to their clients by telephone. That conference was completed without a settlement having been reached, although the Court left counsel with a proposed settlement amount for both sides to consider.

Shortly thereafter, on March 30, 2017, counsel jointly telephoned the Court to report that they had reached a settlement, pursuant to which defendant City of Englewood would pay plaintiffs $1.31 million in full and final resolution of the action. Accordingly, as is usual when a settlement in principle is reached, counsel consented to administrative closure of the case by 60-day Order. ECF No. 84.

On May 31, 2017, defendants filed the instant motion to enforce settlement, asserting that settlement had not been consummated because plaintiffs refused to sign documents releasing defendants from the asserted claims in exchange for payment of the agreed settlement amount. ECF No. 87. Plaintiffs opposed this motion *pro se*, ECF No. 95, and subsequently notified the

2

Court that they had terminated their counsel in this matter. ECF No. 102. Plaintiffs then filed an omnibus-style motion on July 28, 2017, seeking the recusal of the undersigned Magistrate Judge, a "change of venue," and to "remand the case for trial." ECF Nos. 107, 108, 109. By Letter Order, the Court denied plaintiffs' request for recusal and change of venue on October 16, 2017. ECF No. 120.

By Order of October 17, 2017, the Court scheduled an evidentiary hearing for November 3, 2017 to resolve factual issues relevant to the instant motions. ECF No. 121. The Court ordered defendants to identify the witnesses they intended to call at the hearing and the exhibits on which they planned to rely on or before October 23, 2017. *Id.*

In compliance with that Order, defendants' filed a letter on October 18, 2017 identifying plaintiffs' former counsel as among the witnesses they planned to subpoena to testify at the evidentiary hearing. ECF No. 122. On October 30, 2017, plaintiffs filed a motion to quash the subpoenas on their former counsel and requested an indefinite adjournment of the hearing. ECF Nos. 130, 131.

On October 30, 2017, the Court adjourned the evidentiary hearing from November 3, 2017 to November 6, 2017 upon notice to all parties. This adjournment was in part due to plaintiffs' failure to participate in status teleconferences regarding the hearing that the Court had scheduled. *See* ECF No. 129.

The Court conducted the evidentiary hearing on November 6, 2017. Plaintiffs *pro se* and counsel for all defendants attended. At the outset of the hearing, the Court denied plaintiffs' motions to adjourn the hearing and to quash the subpoenas on their former counsel. *See* ECF No. 135. The hearing then proceeded, with defendants calling plaintiffs' former counsel, Michael

Maggiano, Esq. and Antonio Romanucci, Esq., to testify. Plaintiffs cross-examined Messrs. Romanucci and Maggiano but declined the opportunity offered by the Court to testify themselves.

## II. ANALYSIS

The motions before the Court require the Court to decide three issues. The first is whether an enforceable settlement was reached in this matter. If the Court determines that it was, defendants' motion to enforce settlement must be granted and plaintiffs' motion to restore this case to the active docket for trial must be denied. The second issue is, assuming an enforceable settlement was reached, what terms should be included in the release that plaintiffs declined to sign. Finally, the Court must address defendants' application for fees in connection with their motion to enforce settlement. The Court addresses each issue in the sections below.

### A. Motion To Enforce Settlement

Defendants contend that an enforceable settlement was reached in that it was agreed that they would pay $1.31 million to plaintiffs in exchange for plaintiffs' release of the claims in this action. Plaintiffs deny that a settlement was reached insofar as they never executed written settlement documents.

A motion to enforce a settlement agreement is generally treated under the same standard as a motion for summary judgment. *Natale v. E. Coast Salon Servs., Inc.*, Civ. No. 13-1254 (NLH), 2016 WL 659722, at *2 (D.N.J. Feb. 17, 2016); *Leonard v. Univ. of Del.*, 204 F. Supp. 2d 784, 786 (D. Del. 2002), *aff'd* 80 F. App'x 286 (3d Cir. 2003). Where questions of fact exist, the Court may take evidence and perform fact-finding necessary to resolve the motion, as it did at the evidentiary hearing on November 6, 2017. *See McDonnell v. Engine Distribs.*, 314 F. App'x 509, 511 (3d Cir. 2009).

4

A settlement agreement is a contract, the enforcement of which is governed by state law, and therefore the instant motions will be analyzed under New Jersey law. *See United States v. Struble*, 489 F. App'x 599, 602 (3d Cir. 2012); *Excelsior Insurance Co. v. Pennsbury Pain Center*, 975 F. Supp. 342, 349 (D.N.J. 1996). New Jersey has a "strong policy of enforcing settlements . . . based upon the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter." *Brundage v. Estate of Carambio*, 195 N.J. 575, 600–01 (2008) (internal quotations omitted). In furtherance of that policy, New Jersey courts "strain to give effect to the terms of a settlement wherever possible," and settlements will be enforced "absent compelling circumstances." *Id.*

An enforceable contract arises from offer, acceptance, and consideration. *Creek Ranch, Inc. v. New Jersey Turnpike Authority*, 75 N.J. 421 (1978). The parties must agree and manifest an intention to be bound by essential terms that are sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992). Under New Jersey law, the parties are bound by a settlement agreement even absent a writing, as long as they have agreed orally to the essential terms. *Zong v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 632 F. App'x 692, 694 (3d Cir. 2015) (quoting *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1971). *See also Kelly v. Boeing, Inc.*, 513 F. App'x 131, 134 (3d Cir. 2013) ("A settlement agreement is binding once the parties express mutual assent to its terms and conditions, and need not be reduced to writing to be enforceable."); *McDonnell v. Engine Distribs.*, Civ. No. 03-1999, 2007 WL 2814628, at * 3 (D.N.J. Sept. 24, 2007) ("[I]t is sufficient if the parties orally agree on the essential terms, even though they contemplate the later execution of a formal document to memorialize their undertaking."). The

party seeking to enforce the settlement has the burden of proving its existence. *See U.S. v. Lightman*, 988 F. Supp. 448, 459 (D.N.J. 1997).

For the reasons set forth below, the undersigned recommends finding that the parties entered a binding and enforceable settlement agreement, notwithstanding the lack of a fully executed written settlement agreement.

As the New Jersey Supreme Court has stated:

> A contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. . . . Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.

*Weichert Co. Realtors*, 608 A.2d at 284 (internal quotations omitted). Here, the Court finds that a contract was formed between the parties because the essential terms of their agreement were sufficiently definite, supported by consideration, and evinced a meeting of the minds.

First, with respect to whether there was an agreement to sufficiently definite and essential terms, defendants submitted emails between the parties demonstrating the essential terms of an agreement. Defense counsel stated by email dated March 30, 2017 that they had agreed "plaintiffs together [would] receive $1.31M paid without [defendants'] admission of liability to resolve all claims," ECF No. 87 at Ex. B, and plaintiffs' counsel stated their clients had approved a "settlement for $1.31 . . . with releases to all named defendants for that sum by Plaintiffs," *id.* at Ex. C.

Second, this agreement clearly was supported by sufficient consideration. Defendants' agreement to pay a sum certain in exchange for plaintiffs' releasing them from the claims in this lawsuit is a sufficient *quid pro quo* to constitute consideration.

The real dispute on this motion is on the third contractual element, whether there was a meeting of the minds between the parties on the essential terms of settlement set forth above. Specifically, the issue is whether plaintiffs agreed to release the claims asserted in their Complaint

in exchange for the $1.31 million payment. This calls into question whether plaintiffs' counsel had the authority of their clients to agree to those terms.

The law on this issue is clear. "Under New Jersey law, settlement stipulations made by attorneys when acting within the scope of their authority are enforceable against their clients." *See McDonnell*, 2007 WL 2814628, at *8 (citing *Jennings v. Reed*, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005)). An attorney is presumed to possess authority to act on behalf of his client. *Id.* The party asserting the lack of authority "must sustain 'a heavy burden to establish that [the] attorney acted without any kind of authority . . . ." *Jennings*, 885 A.2d at 490 (quoting *Sur. Ins. Co. of Cal. v. Williams*, 729 F.2d 581, 583 (8th Cir. 1984)).

Here, based on the testimony and documents presented at the evidentiary hearing, the Court finds plaintiffs' counsel had actual authority to enter into the settlement agreement. *See Jennings*, 885 A.2d at 490 ("Actual authority (express or implied) may 'be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'") (quoting Restatement (Second) of Agency § 26 (1958)). Mr. Maggiano and Mr. Romanucci both testified credibly that they had explained to plaintiffs that they would receive $1.31 million in settlement and in exchange would have to release the claims in the Complaint against defendants. Both witnesses also testified that plaintiffs manifested assent to those essential terms of the agreement. Plaintiffs' cross-examination was not effective in challenging their former counsels' testimony on these facts. Nor did plaintiffs put forward evidence of any nature to contradict their counsels' assertion of having had plaintiffs' actual authority to bind them in settlement. Although plaintiffs were advised by the Court that they were welcome to take the witness stand to testify on their own behalves or to call Mr. Romanucci or Mr. Maggiano to testify in rebuttal, they declined to do either. Accordingly,

the uncontradicted evidence established that plaintiffs authorized their counsel to enter into the essential terms of settlement.

While plaintiffs dispute that any settlement was reached, they do not seem to dispute so much that they accepted the $1.31 million settlement amount as that they agreed to the precise terms of the proposed written releases. Plaintiffs' refusal, however, to sign the proposed written releases does not render the settlement unenforceable. The scope of the releases is a non-essential term of the settlement; the precise language of the release documents was not required to be agreed in order to create an enforceable settlement, where the concept of a release of claims in the lawsuit *was* agreed. *See McDonnell*, 2007 WL 2814628, at *8 ("The disputed terms - concerning the scope of the release, ensuring payment, tax treatment, indemnification, and the scope of confidentiality - all speak to the settlement's implementation. They are not, however, essentials of the settlement."). Under New Jersey law "[a]s long as the parties orally agree to the essential terms, the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges." *McDonnell*, 2007 WL 2814628, at *3. Accordingly, given plaintiffs' agreement to release defendants in exchange for a definite monetary amount, the absence agreement on the precise terms of the release does not render the settlement unenforceable. For these reasons, the Court recommends a finding that an enforceable settlement was reached between the parties, and consequently denying plaintiffs' motion to restore this case to the active docket for trial.

**B. Scope of the Releases**

While plaintiffs' *pro se* submissions are not a model of clarity, they appear to dispute the scope of the releases they were to provide as consideration. The Court notes it "has no right 'to rewrite the contract merely because one might conclude that it might well have been functionally

8

desirable to draft it differently.' Nor may the court make a better contract for the parties than they have seen fit to make, or to alter it for the benefit of one party or the other." *Grand Cent. Props., L.L.C. v. Sudler Tinton Falls, L.P.*, 2013 N.J. Super. Unpub. LEXIS 544, at *8-9 (App. Div. 2013) (quoting *Karl's Sales and Service, Inc. v. Gimbel Bros., Inc.*, 249 N.J. Super. 487, 493 (App. Div. 1991), *cert. denied*, 127 N.J. 548 (1991)). Nevertheless, "if the agreement is silent as to a circumstance which thereafter arises, the parties may not be left without an agreement. So long as the parties intended to be bound by their agreement and a court is able to fill any gaps necessary to achieve a fair and just result, the contract may be modified by the addition of reasonable terms." *Id.* (quoting *Aarvig v. Aarvig*, 590 A.2d 704 (Law Div. 1991)). "It is when the missing provisions go to the essence of the agreement that a court may not insert the probable or reasonable resolution of the situation which would have been provided if the parties had contemplated the existing situation when the agreement was formed." *Aarvig*, 590 A.2d at 707.

Here, as the Court previously explained, the precise language of the Releases is a non-essential term. Therefore, the Court may supply the terms to the agreement. Having reviewed the proposed form of release that was exchanged by the parties' counsel, and having considered the apparent objections to parts of the proposed form of release expressed by the *pro se* plaintiffs at the evidentiary hearing, the Court deems the following release language to be appropriate and closest to what was agreed by plaintiffs:

> In exchange for the payment of a total of $1,310,000 to be paid by, or on behalf of, defendants to plaintiffs (with a gross amount of $1 million being allocated to plaintiff Chukwuemeka Ezekwo and the remainder being allocated to plaintiff Ifeoma Ezekwo), and without admission of liability by any party, plaintiffs and their heirs, executors and assigns hereby agree to release the defendants and their insurers (Garden State Municipal Joint Insurance Fund, Britt Insurance Group and Lloyd's of London) as well as all of defendants' and defendants' insurers' employers, partners, co-workers and employees, from any and all rights, claims and injuries, known or unknown, asserted or not asserted, arising out of the incident described in the Complaint filed in *Ezekwo v. Englewood*, 15-CV-3167

9

(SDW)(LDW) that occurred on or about May 5, 2013 at Englewood Hospital and Medical Center.

It is respectfully recommended that the District Court supply this form of release as part of the settlement agreement, given that the parties did not reach final agreement on the precise terms of the release, though they agreed in principle that plaintiffs would provide a release.

### C. Attorneys' Fees

The Supreme Court of the United States instructs that the "potent" power to sanction litigants "be exercised with restraint and discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Here, defendants' counsel seek attorneys' fees for their work on the motion to enforce, pursuant to the Court's inherent authority to impose sanctions upon those who would abuse the judicial process. *See* ECF Nos. 87, 133. Given plaintiffs' *pro se* status and their seeming lack of understanding that an enforceable settlement could be an oral agreement to sufficiently definite, essential terms, the Court does not find that their conduct merits sanctions. Accordingly, this Court does not recommend departing from the ordinary rule that each party bears its own costs and fees and it is recommended that the District Court decline to exercise its authority to award defendants' attorneys' fees in connection with the motion to enforce.

### III.    CONCLUSION

For the foregoing reasons, the Court recommends that defendant's motion to enforce the settlement be **GRANTED**, defendants' motion for costs and attorneys' fees be **DENIED,** and that plaintiffs' motion to remand the case for trial be **DENIED.**

The parties are hereby advised that, pursuant to Fed. R. Civ. P. 73(b)(2), they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to United States District Judge Susan D. Wigenton.

Dated: November 17, 2017

**Leda Dunn Wettre**
**United States Magistrate Judge**

Original:    Clerk of the Court
cc:    Hon. Susan D. Wigenton, U.S.D.J.
    All Parties